**DAVID R. REED, State Bar #62479**
Attorney at Law (Automatictrials@yahoo.com)
42-215 Washington St. Suite A-204
Palm Desert, Ca. 92211
(760) 333-7975

Attorney for: JUAN MUNOZ HERNANDEZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> -vs- ) <br> ) <br> JUAN MUNOZ HERNANDEZ, ) <br> ) <br> Defendant ) <br> _____ ) | NO: 5:25 cr-232(A) SSS <br><br> POSITION OF MR. JUAN MUNOZ RE: SENTENCING FACTORS <br><br> Date: December 19, 2025 <br> Time: 10:00 am |

To: the above-entitled Court, and Assistant United States Attorney, Sonah Lee:

Comes now David R. Reed, Counsel for defendant, JUAN MUNOZ HERNANDEZ ("Mr. Munoz") and files his Position Re Sentencing Factor Brief.

We disagree with the guideline calculation, as discussed below. Defendant has been in custody since his arrest on June 28, 2025. Once defendant completes his sentence, he will be deported to Mexico. Based on all the circumstances, a "minimally sufficient" sentence would be "time-served." Defendant acted-out of fear and is truly sorry for punching the ICE officer. Mr. Munoz's deportation will alienate him from the prosperous life he so enjoyed here as a hard-working tire installer. Defendant's deportation, with no chance to legally return to the U.S., is a form of punishment in itself. In sum, it is simply counter-effective to keep housing defendant for a year-and-a-day, as recommended by the Probation Office.

Dated: Nov 23, 2025              Respectfully submitted

                                 /S/ David R. Reed
                                 _____
                                 David R. Reed for Mr. Munoz

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

We submit that the recommended guideline calculation of the Probation Office may be technically incorrect by 2 points. Should the Court disagree, we ask it to vary downward based on a combination of factors which exist in the case and reach a "minimally-sufficient" sentence of "time served." This will result in defendant's rapid deportation to his family in Mexico.

Before discussing the many factors that exist in the case, the Court should note that when considering the specific "3553" factor regarding "parity," Mr. Munoz's charged co-defendant, Juan Cireneo Marcos, who forcefully resisted arrest along with Mr. Munoz when both were arrested, albeit he didn't punch an agent, had his case dismissed after having served a few days in custody. (See: Group Exhibit 1: the Criminal Complaint filed against both defendants to show the Court what each defendant did. This includes Defendant Cireneo's docket, and the government's motion to dismiss his case, and the dismissal order.) [1]

## II. GUIDELINES

Defendant was originally indicted for 18 U.S.C. § 111(a)(1)(b). This is the statute which charged defendant with committing "bodily injury" to the agent, to wit, causing a broken finger. However, the government entered into a plea agreement in which the originally-indicted statute would be requested to be dismissed by the court, and defendant allowed to plead guilty in a First Superseding Information to: 18 U.S.C. § 111(a)(1). That's the same "simple assault" charge to which Mr. Cirenio

---

[1] For full disclosure, unlike Mr. Munoz, Mr. Cirenio made bond and after posting his bond, and being indicted for the same offense to which Mr. Munoz pled guilty, he was arrested by ICE for deportation proceedings. The government then moved to dismiss. Admittedly, Cireneo only wrestled with the officers, and procedurally his case was in a different posture than Mr. Munoz's case. However, he effectively only did a few days in custody. Mr. Munoz should be treated in some relative parity by virtue of now having spent over six months in custody.

was indicted. Even though Mr. Munoz's original indictment would be requested to be dismissed by the government, the Probation Office still applied the +2 enhancement for defendant having caused "bodily injury" (see PSR ¶22.)

    (a) The Legal Effect of Dismissed **Statutes** Concerning "Relevant Conduct."

Guideline §1B1.3 was amended in 2024 to add a new section, §1B1.3(c)(10,) which provides that "relevant conduct does **not include** conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." Accordingly, the +2 enhancement recommended by the Probation Office should not be applied. To do so would elevate guideline provisions over statutory obligations. If the Court disagrees, then we ask that it vary downward by 2 points based on this unique guideline issue.

    (b)  Defendant Has a Zero Point Criminal History

Here, the Probation Office was technically correct in **not** applying the -2 "ZERO POINT OFFENDER PROVISION." This is because defendant pled guilty to committing an "assault" against an ICE officer. Under Guideline §4C1.1 (3), a defendant cannot receive this decrease if violence was used in connection with the offense. Accordingly, counsel asks that the Court consider that Mr. Munoz has never been in trouble in his life. But for his "aberrant" conduct in this case, which is a recognized departure ground under Guideline §5K2.20, the Court may give him a below guideline sentence if his behavior was "aberrant."  Note, this provision cannot be applied if a defendant caused "**serious** bodily injury, or death." See §5K2.20(1). However, Mr. Munoz did not cause death or serious bodily injury to the agent. If the Court finds that the bodily injury enhancement applies, we ask for a -2 point departure, whether under "3553" factors, or based on the long-recognized departure ground of "aberrant" conduct, one that could only contextually relate to a defendant who must have no criminal history points.

///

(c) Defendant Pled Guilty Very Early

As the Court knows, only people who have an Adjusted Offense Guideline Score of at least 16 are given the full -3 point decrease for "early acceptance." Here, based on the Probation Office's Adjusted Offense Level Score of 15 (See PSR ¶ 26, one point shy of 16,) defendant cannot technically be given the additional minus one point for "early acceptance." However, the government, if asked, might tell the Court that they did not start preparation for trial against Mr. Munoz, as his counsel made it clear very early in the case that Mr. Munoz did not want to go to trial. Rather, once the parties agreed to proceed on the First Superseding Information, the case was resolved immediately, and this occurred very early in the progression of the case. We ask the Court to consider this factor under "3553" and allow Mr. Munoz the extra "early acceptance" 1-point decrease as a variance.

(d) THE DEFENSE POSITION ON GUIDELINES:

The Probation Office was correct in calculating the Base Offense Level at 10, at ¶19 of the PSR  =  10.

There is indeed a +3 enhancement for physical contact against the officer, at ¶20 of the PSR = total now  = 13.

There should be **no** enhancement for "bodily" injury at ¶ 22, as discussed above. Defendant did receive the above +3 enhancement for physical contact.

THE ADJUSTED OFFENSE LEVEL IS THUS 13 AT ¶ 26 of the PSR.

There should be a -2 point departure for aberrant behavior as discussed above. Therefore, 13 - 2 = TOTAL OFFENSE LEVEL OF 11

There should be an extra -1 point decrease for "early acceptance", as a "3553" variance.

THE TOTAL OFFENSE LEVEL SHOULD BE: 10 at ¶30 of the PSR.

ACCORDINGLY, LEVEL 10, CRIMINAL SCORE I = **6-12 MONTHS**

Lastly, again, the Court is asked to consider the concept of "parity" in the overall sentencing calculus of "3553" factors, because, even though defendant

Cirenio did not punch an ICE officer, he was arrested and indicted for the same offense to which Mr. Munoz ultimately pled guilty. Cireneo only spent a few days in custody. To repeat, for full disclosure, Cirenio was picked up by ICE after his release on bond and quickly deported to Mexico, and the government moved to dismiss his case. Counsel knows that Cireneo's case was "apples" and Mr. Munoz's case is "oranges." Nevertheless, Cirenio effectively spent a few days in custody for similar conduct charged in the complaint, while Mr. Munoz has now done over 6 actual months!

**III. 3553 Factors**

Counsel does not wish to cut and paste the excellent personal history investigation completed by the probation office concerning Mr. Munoz's life. The Probation Office did an excellent job. Counsel simply refers the Court to the letters within the second Exhibit Set in support of this sentencing brief. In his heart, Mr. Munoz is a good person who has remorse. He is a person who loves to work hard at difficult physical work at a tire shop. This has allowed him to live a happy life here in the U.S. (albeit illegally) and be able to send money back to his wife and children in Mexico. Defendant has been unable to send money home for the last six months. Now, defendant's life of freedom and prosperity here is permanently over. It is counter effective to delay his rapid deportation to his family in Mexico and continue housing him here with a year-and-a-day sentence. Mr. Munoz has now been punished with about six months of custody.

Dated: November 23, 2025          Respectfully submitted,

                                   /s/ David R. Reed

                                   _____

                                   David R. Reed for Mr. Munoz